Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Welch presiding, along with Justice Moore and Justice Barberis. The first case this morning is number 5-20-0136, White v. Fitzpatrick et al. Arguing for the appellant, Carlin White, is David Durie. Arguing for the appellees, Joseph and Amber Fitzpatrick, is Mark Dinsmore. Arguing for the appellees, Thomas Wuest, Mark Bernsten, and City of Breeze is Charles Pierce. Each side will have 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. The two appellee attorneys have decided to split their 20 minutes and argue 10 minutes each. You'll see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. And finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Counselor, are you ready to proceed? Yes, Your Honor. Go ahead. May it please the court, this is a case for malicious prosecution and abusive process arising out of a previous criminal action against Carlin White. She was acquitted of the criminal charges. The second amended complaint was dismissed by Judge Kester under Section 615 of the Civil Practice Act, which means that all allegations of fact and reasonable inferences are to be construed in favor of the plaintiff. The reason for dismissal of the malicious prosecution claims by Judge Kester is that malice was not sufficiently alleged. As indicated in the briefs, there is a case that holds that if an action is filed for a reason other than to bring the criminal defendant to justice, that sufficiently alleges malice for purposes of a malicious prosecution case. That case is Rickey v. Maxson, Illinois Supreme Court, 1978, which is cited in the briefs. In this case, the allegations are that this criminal charge was really filed by the Fitzpatricks and assisted by Officers West and Bernson to assist Joseph Fitzpatrick in a contentious pending child custody dispute. The plaintiff is the mother of a child who was nine years old at the time, G.F. is his initials, a male child, and Joseph Fitzpatrick is the biological father. The two of them were never married. They spent some time together, but separated shortly after the birth. There was a child custody proceeding in which primary custody was awarded to Coraline, and weekends and vacations in the summer were temporary custody was awarded to Joseph Fitzpatrick. At the time of the criminal charges, the event that led to criminal charges, there were several pending motions in that child custody dispute. After the criminal charges were brought, in the child custody case, primary custody was flipped from Coraline White to Joseph Fitzpatrick. That remains the situation for 18 months until Coraline was acquitted of the criminal charges of assault and battery and domestic assault. At that point in time, in the child custody proceedings, there were further hearings and primary custody was awarded back to Coraline White. So there's ample allegations that the aid Fitzpatrick in the pending a contentious child custody dispute. Counselor, were those contentions brought up in the federal procedures? They were. Were they disposed of by the federal court? What the federal court ruled, granted summary judgment and the Seventh Circuit affirmed on the false arrest charge, and specifically reserved for state court action, the abusive process and malicious prosecution claims. We've cited to the court, NOAC versus St. Rita High School, Illinois Supreme Court, 2001. Beeman versus Friesmeier, Illinois Supreme Court, 2019. And Gauger versus Hendel, Second District, 2011. All of those cases held in similar circumstances where there was a federal civil rights case and the federal charges were determined in favor of the defendants. But the federal court then failed to exercise supplemental jurisdiction over the state court actions that those state court actions were not barred by either race judicata or collateral estoppel, in this case false, squarely within those decisions. So yes, this argument was made in the federal court, but the federal court specifically carved out for state court determination, the malicious prosecution and abusive process charges that are before the correct me if I'm wrong, also ruled that going besides just the initial charging of your client was what they found to have, you know, reasonable reason for doing so for those charging bodies, but also moving forward and prosecuting the case. Is that correct? No, that's not correct. They did not find, no, they didn't address that at all going forward after the charge? The federal court decided or determined that there was probable cause as a matter of law and summary judgment for the arrest, the false arrest charge, did not address the issue of whether there was probable cause to file the criminal charges or to continue to in fact, specifically reserved malicious prosecution and abusive process for determination by the state court. And I think in our opening brief, we cited some language from the federal court decision. I believe that was the district court. Then we went to the seventh circuit and the cases I've just cited were all the same. Nowak versus Santa Rita high school, Beeman versus Freemeyer, Gaga versus Hendel, all were the same where the federal civil rights issues were decided in favor of the defendants. Supplemental jurisdiction was denied on the state court claims, and there was no race judicata and collateral estoppel from state court determination of the state court claims. So on the grounds that the trial court ruled that there was no malice was alleged. An issue which the trial court did not specifically address, but which is argued other than the general dismissal for fair to state a cause of action without being specific. The other issue that the parties have focused on is whether there was probable cause to prosecute the criminal case in this case and to continue to prosecute it, which is an element of malicious prosecution. Not only could you have a lack of probable cause to initiate criminal charges, you can have a lack of probable cause to continue to prosecute the criminal charges during the prosecution of the case, and we have alleged both in this case. The evidence in the case is there was no blood on the knife. The police officer Bernson refused to take the Fitzpatrick shirt into evidence, but Coralyn White was contending that Fitzpatrick's wounds were self-inflicted for the purpose of framing her, and the shirt that there was a wound up near the collar of the t-shirt, but it would have been through the shirt if Coralyn had stabbed him. There would be a hole there, so the shirt was definitely relevant evidence. In fact, the police chief testified, and he had the same training as West and Bernson, that they should have taken the shirt into evidence. By the time they get around to the criminal case, the Fitzpatricks had destroyed the shirt. She demanded a lie detector test, saying that her fingerprints would not be on the knife. They refused to give her a lie detector test, and in fact, later on, before the criminal case was tried, the state police lab tested the knife, found no blood on the knife, and no fingerprints on the knife, which would be remarkable if Coralyn had used the knife to stab Fitzpatrick, because even though his wounds were and the police did not search Fitzpatrick or his friend Stacer from next door or the house to determine a weapon, the knife itself was not found until after Officer West had taken Coralyn out of the house for a period of at least two minutes, leaving Fitzpatrick and Stacer, his friend, in the house with ample opportunity to have planted the knife, which was right in a place that would have been seen by Officer West when he first came into the house, because this occurred right at the front door. There was evidence that Fitzpatrick admittedly lied to Coralyn to induce her to come to his house on the date of this event, and he admitted that. I'm not reciting all the evidence here, but there was ample evidence that there was an absence of probable cause, which is the cases we've cited to the court is normally a issue of fact for the jury to decide in a malicious prosecution case following a previous criminal action against the civil plaintiff, a criminal defendant. For example, in Gauger versus Hendel, there was a murder conviction of Gauger, and later on he was pardoned because the police had found the true killers, and after he was pardoned, he filed an action to vacate the criminal conviction. It went up to the court of appeals, and the court of appeals said that there was no probable cause to prosecute him in the first place. He then filed a malicious prosecution case and argued that the court of appeals had already decided the issue of probable cause, and in the malicious prosecution civil case, the court determined that that was a jury issue. It went to the jury. They found in favor of the, I think there might have been a summary judgment for some defendants, but it went to the jury against some of the police officers, and then it went out, and the jury ruled in favor of the defendant police officers. Gauger appealed and argued that probable cause had been determined by the prior appellate decision stating that there was no probable cause for him to be charged in the first place, and the court ruled that that was still an issue of fact. Race judicata collateral estoppel did not apply. That was still an issue of fact to be decided in the malicious prosecution case, so notwithstanding a prior appellate decision that there was no probable cause, it was a jury issue to decide whether there was probable cause or not. A similar case we've cited to the court, Porter versus Chicago, and then the other cases, all of which held that probable cause is normally an issue of fact to be decided by the jury in these malicious prosecution cases. Salmon versus Camberos, Rogers versus People's Gas and Light, Robinson versus EconoCorp, Howard versus Firmland, Fabiano versus City of Palos Hills, and Ferguson versus the City of Chicago. So I would submit to the court that there's ample allegations in this case which support a lack of probable cause to initiate and to continue the prosecution of the criminal case against Cora Lynn, and of course her testimony was that she did not stab Fitzpatrick, that as knocked her to the floor and pinned her to the floor, and he kept her pinned to the floor until the police arrived. She had no opportunity to do anything with the knife that was later found, and Fitzpatrick first said that she cut him with a razor, and then later switched to claiming that it was the knife, which was not found until after he was left alone in the house for a period of at least two minutes with his next-door neighbor Stacer. Let me ask you a question while you're on that, Mr. Drake. While you're on the reciting some of the facts of the case, let me just ask a question. With regard to what happened and getting her to his house, I believe if my recollection is correct, he called her and admitted later that he lied to her to get her to come to the house, is that correct? That is true, and he admitted that to Officer Bernson. Was there any testimony or any evidence that suggests why he did that? Was there a line of questioning to him regarding why he, you know, quote-unquote, lured her to the house? I don't recall that he ever gave an explanation other than he just admitted that he lied. I guess any inferences would have to be drawn in favor of Cora Lynn. You could infer, I suppose, if he was entitled to the benefit of inferences, that he did it just to avoid having to drive to Greenville and drop him off, just as a matter of he'd rather make her drive to his house. They were supposed to meet halfway in between their houses. But there was no testimony by him, specifically his reasoning for doing so. Yeah, because there were text messages, as I recall, that were exchanged, which the police officers were given. As I recall, the reason he gave is that he didn't have a car seat and that his wife, Amber, had taken the other car, and therefore he didn't have a car seat. But he admitted that was a lie. Sure, and I know the facts of the case. I was just trying to figure out there was a hole in the facts as far as I was concerned with why, you know, after admitting that he lied to get her to come to the house, I didn't know if there was further testimony as to his reasoning for doing so. So you can move on. I don't know. Officer Bernson, I was just curious, Officer Bernson said words to the effect, it didn't matter whether he lied or not, he didn't take that into consideration as a factor. And obviously, Officer Bernson had made up his mind. And there was a relationship between Amber and the investigating officers. There were four investigating officers. Two were from the Sheriff's Office, Sergeant Dennis Perez, that Amber had worked with for, I think, about six years because she worked in the Sheriff's She worked with Officer Perez in the Sheriff's Office, and he was involved in speaking with Officer Bernson when Officer Bernson arrived at his initial conclusions without talking to Coralyn. And in addition, Amber worked with Officer Bernson, because he would take prisoners over to the Sheriff's Office from Breeze and process them, and she worked with him there. And Amber and Joseph Fitzpatrick are both prison guards in Greenville. So they were really part of the law enforcement community, and they had ample relations with Officer Bernson and Officer West, who testified in all of the child custody proceedings. In addition to the preliminary hearing, the trial, there were two separate, there was an order of protection. And actually, Officer Bernson had recommended to Joseph Fitzpatrick on the day of the arrest of Coralyn that he file for an order of protection to boost his chances in the child custody case. That recommendation was made by Officer Bernson. And both Officer Bernson and Officer West knew that Joseph Fitzpatrick had a past history of abusing women, including Amber, his wife, Joseph Fitzpatrick was like 6'2 and 230 pounds, works out, he's muscular, and he engages in martial arts. Coralyn was like 5'2 and 120 pounds. There was no comparison physically as to the strength of the two. When you consider all of those factors, we would submit that it's an issue of fact to be decided by a jury, not on a Section 615 motion to dismiss. I addressed collateral estoppel and res judicata previously. The Nowak v. St. Rita High School case dealt with both collateral estoppel and res judicata. We also have claims for abuse of process. And I would refer the court to Couric v. Kavanaugh, one of the Illinois cases we cited, but also the restatement of torts and processor on torts, and two Missouri cases and a South Dakota Supreme Court case, which we've cited. Abuse of process is an ulterior purpose for bringing the criminal action and the use of process not regular in the matter charged. Well, that last term is sort of vague, but in the Missouri cases, they both held, and restatement of torts, that the real gravamen of the cause of action is that you're using the criminal process for some purpose other than bringing the criminal defendant to justice. And the second element of abuse of process, in the Missouri cases at least, say some use of the process not regular for the matter charged, or aimed at an objective not legitimate in the proper employment of such process. So they bring it back to essentially an ulterior purpose type of issue, which is exactly what the restatement of torts says, that you're bringing the criminal action for a purpose other than bringing that defendant to justice for the crime, but in fact for some other purpose. And the other purpose or sometimes because of a pending divorce case, or in the case of Rittenbusch versus Holt, one of the Missouri Supreme Court cases, where a criminal charge for damage to a car was brought to assist the person charging that crime in a civil case to recover damages. And we fall within the classic definition of abusive process. I see my time is up. Counsel for the appellate, ready to proceed and keep your keeping your own time. You can watch it. Thank you, your honors. Good morning. May it please the court. My name is Mark Dins on behalf of the defendants, Joseph and Amber Fitzpatrick. Regarding plaintiff's arguments regarding the application of collateral estoppel, it is defendant's position that collateral estoppel will apply to bar plaintiff's claim in this case for two reasons. Now, as the court knows, the doctrine of collateral estoppel precludes the relitigation of an issue that was adjudicated by a prior court. And as pointed out in defendant's briefs, the Seventh Circuit, on review of the Southern District's finding that there is probable cause to arrest a plaintiff, took the analysis one step further and not only found that there is probable cause to arrest plaintiff, but there was criminal offenses of which he was charged in the underlying criminal proceedings. And as defendant's position that on that basis alone, this court conclude that plaintiff is unable to properly plead on what's his prosecution claim because he is unable to plead a lack of probable cause. In addition to that, there's another basis on what collateral estoppel could apply if the court were to consider the Johnson case. In the Johnson case, the court analyzed a situation where a prior court or a determination had already been made that there was probable cause for the arrest of the plaintiff. And in its analysis, the court was to determine whether there was probable cause later for the charging of the plaintiff. The court noted that there is no prior Illinois case analyzing that specific situation, and then turned to some sister states and their case ought to determine whether or not that issue had been analyzed previously. The court found a case where the sister state had analyzed a situation where probable cause was found to exist for the arrest of a plaintiff in a similar situation, and the court then analyzed whether or not there was probable cause to also charge a plaintiff. The court noted that if there are no intervening cause, if there is no intervening cause that invalidates the finding of probable cause for the arrest of the plaintiff, then that probable cause continues on such that probable cause existed for the charging of the plaintiff. In that specific instance, the court noted that only 24 hours had elapsed between the time that the plaintiff had been arrested and the time the plaintiff had been charged. In the instant case, the plaintiff has alleged in this complaint, or in her complaint, that only 21 hours elapsed between the time that she was arrested and the time that she was charged in this case. However, in the second minute complaint, plaintiff has not alleged any intervening cause that occurred between the time that she was arrested and the time that she was charged, such that it's defendant's position that the federal court's finding that probable cause existed for the arrest of the plaintiff can also apply to the charging of the plaintiff. Based on that, we believe that the court could apply collateral estoppel in the light of Johnson, find that this issue has already been ruled on, and therefore preclude the plaintiff from bringing a malicious prosecution complaint. Now, plaintiff relies on a NOAC case for a position that collateral estoppel does not apply in this instance, but I believe NOAC is distinguishable. Mr. Dimond, let me just, for clarification for my purposes, your argument that you just made with regard to for the malicious prosecution claim, the federal courts did not address or rule on probable cause for the malicious prosecution, as Mr. Dury had pointed out. Is that correct? That is correct, Your Honor. They did not specifically state that, but what they did was the court ruled that it was reasonable both to arrest the plaintiff and charge the plaintiff. So I believe that what the court did was they extended their analysis beyond not only the charging issue and found that there was probable cause, but it was reasonable to have charged Coraline with the underlying criminal offenses. So I believe based on that, this court could buy that based on collateral estoppel and find that she can no longer lead a malicious prosecution claim. Okay. Thank you. Turning back to NOAC, Your Honor, I believe that case is distinguishable. In that case, the federal court had declined to extend supplemental jurisdiction to some state law claims that were then reviewed by the state court. In its analysis, the court pointed out that the federal court had examined an ADA claim and that analysis required a retrospective analysis, whereas the state law claim, a breach of contract tenure claim, that claim required a prospective analysis. And because of that, the court found that there was no overlapping issues such that collateral estoppel did not apply in that instance. And I believe that's distinguishable from the incident case where we already know that probable cause has been found to exist for the arresting plaintiff and also the charging plaintiff, which creates a completely different scenario. In addition to that, plaintiff has relied on the Gallagher case and the Porter case report that collateral estoppel doesn't apply, but those two cases also are distinguishable for various reasons. For example, in the Gallagher case, the court found that probable cause was lacking for taking the plaintiff into custody. And the court, in its analysis, was trying to determine whether or not there was probable cause for charging the plaintiff as it relates to a malicious prosecution claim. Because the court had already ruled that there is no probable cause to arrest the plaintiff, and because there is intervening causes or facts at issue or an dispute between the time of the arrest and the charging, the court found that there was a different analysis that had to be done because the facts had changed over the course of that time period. Therefore, the court felt as though collateral estoppel could not be applied in that situation because the issue wasn't in there. Similarly, in the Porter case, it is distinguishable because in that case, there had been no previous determination by the court regarding probable cause for the plaintiff's arrest, which is a completely different situation than what we have here where there's already been determination by the federal courts that there was probable cause for the plaintiff's arrest. I believe based on that, the trial court could affirm, excuse me, this court could affirm the trial court rule that collateral estoppel does bar plaintiff from re-litigating a probable cause issue such that she foreclosed from pursuing a prosecution claim. Now, regarding, excuse me, the issue of plaintiff's failure to state a claim or malicious prosecution, like I said previously, I don't believe the plaintiff is able to plead the lack of probable cause element due to the collateral estoppel application. In addition to that, looking at the Johnson case, I believe the plaintiff is unable to plead a lack of probable cause element in light of the fact the plaintiff has not pled any intervening cause which should invalidate the finding of probable cause by the court. Furthermore, as this court knows, it must ignore conclusions in the law of fact that are not supported by allegation of the specific facts upon which the conclusions rest. In this case, plaintiff has not included any specific allegations regarding any actions taken by the defendant's Joseph Amber Fitzpatrick after the point in time in which probable cause for the arrest had been determined. After Coraline had been arrested, there is no allegations of any actions by the defendants that could lead the court to conclude that they were commencing or continuing the criminal proceedings in this instance. In fact, plaintiff includes no allegations that the state's attorney relied on any statement by the defendants or the defendants coerced or encouraged the state's attorney to subscribe to criminal complaints. Without any nexus between the bringing of the criminal charges against Coraline after probable cause had been found to exist for her arrest, plaintiff is unable to plead that the defendants were commencing or continuing those criminal proceedings. And if they were not continuing or commencing those criminal proceedings, then they cannot be found to have maliciously commenced or continued those criminal proceedings. This defendant's position that based on that, this court could find that plaintiff has failed to live to state a claim for malicious prosecution. Attorney to plaintiff's process, your honors, as plaintiff's counsel pointed out, for abusive process claim, there has to be an existence of an ulterior purpose or motive in some act in the use of legal process not proper in the regular prosecution of proceedings. Now the test the courts have indicated that is used is whether prosecution has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which you cannot compel to do in which he highlighted moments ago. The most common form of abusive process that has been analyzed by the courts is some form of extortion, intimidation or forcing the plaintiff to pay some sort of debt. There is no case law decided by plaintiff where you have a party who is attempting to draw a parallel between two separate legal proceedings, that being criminal proceedings against a plaintiff and a custody dispute. Then throughout the case law you see situations where a party, there is an extortion against a party or intimidation of a party. In this instance, plaintiff is also not alleged the defendants must use the process after it's issued. In fact, there is no allegations as to their involvement in the process after Coraline had been charged other than the fact that they had testified at trial, but the specifics of that are not included in the allegations. I believe based on this, the court could find that finding a firm trial court's ruling. Thank you. Thank you, counsel. Good morning, your honors. May it please the court and counsel. My name is Chuck Pierce. I'm representing the city of Breeze and its two police the history of this case. I think to boil down this collateral stop all issue is very simple. Many times an arrest is made and charges are issued right away. Other times an arrest is made, weeks or months of investigation go by before the charging documents are issued. In the second scenario, there may be different evidence for the issuance of charges than the than the arrest. But when the charge, excuse me, when the arrest and the charge are virtually simultaneous as they were here, we're looking at the same issues. And that's why we believe that these issues have been previously adjudicated. All of the conduct of the police officers, which the plaintiff or the appellant is challenging, happened before the arrest. They're challenging what happened at the crime scene, what evidence was retained. All are pre-arrest issues, which both the state court and the criminal action, the district court and the federal court and the appellate court in the seventh circuit have all found all of those actions were supportive of probable cause. We have a situation where the mom has a knife, she's cutting him. The police arrived, they investigated the situation, they made an arrest. Officer Burns didn't even contact the state's attorney about what evidence he should or should not maintain. So all of the actions complained of by the plaintiff are pre-arrest, and therefore that's why we're saying that they can't now relitigate those. The plaintiff argues that there's this conspiracy, they don't use that word in this case, they used it in the federal court action between the civilian defendants and the police because of their relationship, because there's somehow prison guards and police officers have this secret club that they go to. The federal court examined that exact same theory, all of those facts and found it far-fetched to believe that there's any type of conspiracy that was speculative at best. We are here on a motion to dismiss, but it's unusual in that this case has been fully litigated. Full discovery was taken in the federal case, depositions of all parties, fully briefed and went up to the seventh circuit. So the plaintiff has had more than ample opportunity to come up with facts to show malice and abuse of process. And as we've cited in our brief, when you're looking at a malicious prosecution claim, the court looks at the facts known at the time the complaint is signed, not evidence which is discovered later. And I'm citing to the case of Mack versus First Security Bank. It's cited in our brief. So that circles back to the issue I was mentioning earlier, where all of the facts known at the time the complaint was signed are the same facts the police had discovered in their investigation and are the same facts that three other courts have said amount to probable cause as a matter of law. So whether the officers did a proper crime scene investigation, whether they maintained evidence, whether they believed or disbelieved a witness is all prior to the arrest. It's all prior to the issuance of charges. It's all been beaten to death in all the other courts. And we believe it's time for that issue to be put to the side. And the malicious prosecution claim just simply can't stand. Um, the abusive process claim I want to touch on briefly as well. It hasn't gotten as much attention yet today. Um, but that is judged from a different standard that we look at the actions after the charges have been instituted. So what actions are taken after the fact? And again, as Mr. Dinsmore pointed out, the test in that case is you have to show the ulterior motive or purpose again, some kind of conspiracy or malice extortion is the words the courts use. And I want to stop there for a moment. It's it should be important to note that both of these theories, malicious prosecution and abusive process are not favored. They're narrowly construed. These are to expand potential liability under those. But back to the abusive process, the second element, which plaintiff cannot plead, has not pled and after five years litigation could never approve is that some act in the use of legal process, not proper in the regular prosecution of proceedings. The plaintiff has alleged no facts as to what the city of breeze did no acts. What officer West did nothing that officer Burns didn't did after the issuance of charges, which was improper or not a proper step in the legal process. They testified at trial under subpoena from the state's attorney. Um, and we've cited a case law that simply testifying obviously is not something which can give rise to liability. Um, so the police officers in this case, you know, are judged by a different standard than the prosecutor. Um, they make the arrest and they don't decide at the scene who to believe and who not to believe they have to give some credibility to some people. But as we've cited in our brief, it's not uncommon. And common sense tells us that most of the time there'd be going to be faced with conflicting information. You're not going to have somebody who says, okay, you're right. You got me. I did it. Um, and the, if they, or, Hey, I didn't do it, let me go. And the police said, okay, they denied it. So we'll let them go. That's just not the way the system is set up. So the police make their investigation, which has been thoroughly vetted and approved in this case, the police found that probable cause existed for an arrest and probable cause is a much lower standard than acquittal or, or for, for, uh, uh, beyond a reasonable doubt. So the fact that Ms. White ultimately was acquitted by a jury in a criminal trial is absolutely irrelevant to the claims against the police officers and the city. In this case, um, the officers were involved at the outset, turned it over to the state's attorney and the state's attorney did his job and prosecuted the case and justice was served because the jury said that she was not guilty. And we, you know, that, that is the ultimate decision of that jury. It's not the decision of the police. It's not the decision of the, uh, uh, ex boyfriend or his wife who have been sued individually in this case. Um, this is a case where there was conflicting evidence. The police made a decision, which that there was ample evidence to arrest, uh, the plaintiff to request that charges be issued against the plaintiff. The state's attorney accepted that request and issued charges. The plaintiff has challenged all of that pre charge actions by the police. And at every step of the way, the plaintiff has been denied and that has been found to be appropriate. And we would ask that this court continue on that course and find that the actions of the police officers were appropriate, that the plaintiff's complaint does fail to allege the necessary elements of these two counts and that we'd ask that this court affirmed Judge Kester's ruling and that this case remained dismissed with prejudice. Thank you. Thank you. Council rebuttal. Yes, your honor. First, with respect to the, what was decided by the seventh circuit and by the district court, those decisions are in the rather our charges to look at the totality of the circumstances and determine whether it was reasonable for Weston Burnson to conclude at the time of her arrest that there was probable cause. We hold that such conclusion was reasonable. They decided that there was probable cause to make the arrest and nothing else. And then they affirmed the district court, which at page 56 of the appendix had ruled the court has considered the relevant factors and declines to exercise supplemental jurisdiction over. And he referred to the counts that are malicious prosecution and abusive process. The court firmly believes that Illinois state courts are far better equipped to hear cases that turn on the interpretation and application of state law between citizens of Illinois. As a matter of comity and efficiency, the privilege of hearing such cases should rest with the state court system. The seventh circuit affirmed that decision. That is exactly what occurred in NOAC versus Santa Rita high school. And the court in that case specifically said, whether another, where another court fails to exercise jurisdiction in this case, supplemental jurisdiction, and specifically reserves a claim for state court determination that race, judicata and collateral estoppel do not bar the state court from hearing those claims that were made by the previous federal court. The same thing that was decided in Beeman versus Friesmeier in 2019 and in the appellate court, Gauger versus Hendel. With respect to the argument that all of these events occurred at the time of the arrest, well, first of all, the decision to make an arrest is distinct and different from the decision to prosecute. But malicious prosecution not only applies to the initial decision to prosecute, but to the continuation of the prosecution after the case is filed. In this case, at least two significant events occurred after the criminal case was filed. The Fitzpatrick's destroyed the shirt that was not taken into evidence, even though the chief of police testified that the shirt should have been taken into evidence. And actually, all of the police standards indicate that the shirt should have been taken into evidence. So the defendants did not become aware, or the fact was not established, that the shirt was no longer available to take into evidence until after the case was filed, after the arrest was made. In addition, the state lab tested the knife that was found forensically and determined after the criminal charges were filed that there was no blood on the knife and there was no fingerprints on the knife. And after those two events, the defendants continued to press the criminal charge all the way to a jury trial. So first of all, the decision to make an arrest and the decision to prosecute are two separate decisions, two separate standards for a probable cause. And we've cited a number of cases to the court that hold that it's a separate decision, even if there's no additional facts. It doesn't mean that there's ample evidence to prosecute, even if there's evidence to make an arrest at the moment that the arrest occurs. So clearly in this case, probable cause is an issue of fact. And with respect to the Fitzpatrick's, although perhaps I didn't emphasize this enough, while the police officers could argue, we had this competing claims that Coraline claims that Fitzpatrick stabbed himself. He claims that she stabbed him. The Fitzpatrick's, based on the allegations of the complaint, don't have that. I mean, they have to go with the fact that as alleged, Fitzpatrick deliberately created his own wounds in order to frame Caroline. Because the Fitzpatrick's wouldn't know, they couldn't rely on some other evidence. They would know whether he did that or not. And those are the allegations. We're here on a 615 motion to dismiss. There's ample allegations of fact supporting the claims for malicious prosecution and abusive process. And those claims by two Supreme Court cases, Illinois Supreme Court cases, are not barred by collateral estoppel or judicial estoppel. So we would ask the court to reverse and remand for trial on the merits. Thank you, counsel. Case will be taken under your excuse and the case will be taken under advisement and an order would be issued in due course. Thank you, your honor. Thank you, your honor.